**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

**Dated: September 29 2026**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 23-31595 |
| | ) | |
| Michael V. Nolan, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 23-03056 |
| | ) | |
| Paul Nolan, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Michael V. Nolan, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This Adversary Proceeding is before the court on Defendant-Debtor Michael V. Nolan's ("Defendant") Motion for Summary Judgment ("Motion") seeking to dismiss all four claims for nondischargeability and one claim for denial of discharge, alleged by Plaintiff Paul Nolan ("Plaintiff") in the First Amended Complaint. Plaintiff's Response to Defendant's Motion for

Summary Judgment ("Response") objected to the granting of summary judgment on all five claims. Subsequently, Defendant filed a Reply in Support of Summary Judgment ("Reply"), followed by Plaintiff's Sur-Reply to Defendant's Reply ("Sur-Reply").

The court has jurisdiction over Defendant-Debtor's underlying Chapter 7 case and this Adversary Proceeding pursuant to 28 U.S.C. §§1334, 157(a), and Local General Order 2012–7 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability and objections to discharge are core proceedings that this court may hear and determine. 28 U.S.C. §157(b)(1), (b)(2)(I), (b)(2)(J).

For the following reasons, Defendant's Motion for Summary Judgment will be granted in part and denied in part.

**FACTUAL BACKGROUND**

The following facts are undisputed. Defendant and Plaintiff are uncle and nephew, respectively. Defendant formed Nolan Family Transport, LLC ("NFT"), an Ohio limited liability company, on March 19, 2008. [Doc. #48 at 3]. In early 2021, Defendant and Plaintiff had discussions about Plaintiff providing funding to NFT. [*Id.*]. Following these discussions, between March 2021 and February 2023, funds totaling $432,100.00 were wired to NFT by Plaintiff's wife, by Nolan Management, LLC, as well as by Plaintiff and Plaintiff's wife jointly. [Doc. #54 at 2].

During the two-year period in which Plaintiff allegedly provided funds to NFT, Plaintiff and Defendant had further discussions about changing the ownership structure of NFT to bring in Plaintiff as an owner. [Doc. #48 at 3]. The Parties also discussed Defendant's employment with other companies. [*Id.*] These discussions form part of the basis of Plaintiff's claims for nondischargeability. Plaintiff describes these discussions as a fraudulent inducement scheme by Defendant to secure Plaintiff's investments, [Doc. #45 at 5], while Defendant contends that "at best, there was an oral contract between the two that [Defendant] eventually fulfilled." [Doc. #54 at 4].

It appears that a total of four possible operating agreements exist for NFT, all indicating different arrays of owners with various interests. Additionally, it appears that Defendant signed a "Declaration of Sole Member" prepared by NFT's attorney that allegedly abrogated all other ownership interests. The record before the court does not establish which agreement controls, but

deposition testimony suggests that Plaintiff is not presently an owner of NFT.[1] [Doc. #54 at 4].

In late 2021, Plaintiff's father-in-law agreed to assist with NFT's operations. [Doc. #48 at 4]. Defendant admitted that sometime between January and April 2022, he misrepresented to Plaintiff that he had quit his full-time job to work exclusively for NFT. [Doc. #63 at 7]. Defendant in fact continued to work for another company, DB Schenker, until November 15, 2022. It was not until after November 15, 2022 that he worked exclusively for NFT. [Doc. #54 at 3–4; Doc. #63 at 4; Doc. #69 at 2].

NFT closed operations in May or June of 2023. [Doc. #54 at 3]. On September 6, 2023, Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Bankruptcy Case No. 23-31595. Defendant listed Plaintiff as an unsecured creditor on Schedule E/F. Of relevance is that Defendant's petition also disclosed a prepetition transfer of $107,505.79 to Defendant's wife. An affidavit signed by Defendant's wife asserts that the funds represented one half of an Edward Jones account held with Defendant as joint tenants with a right of survivorship. [Doc. #54, Ex. A].

On December 28, 2023, Plaintiff filed this Adversary Proceeding seeking to hold certain debts nondischargeable under 11 U.S.C. §523(a)(2)(A), (a)(4), (a)(6), (a)(19), and to deny discharge under §727(a)(2). Defendant timely filed an Answer to Plaintiff's Complaint. [Doc. #8].

In the ensuing months, the Parties conducted substantial discovery. Defendant asserts that he responded to 28 discovery requests, including six interrogatories and 22 requests for production of documents, ultimately producing "18,803 bates numbered documents." [Doc. #24 at 2–3]. Defendant's wife was subpoenaed and produced an additional "6,675 bates numbered documents." [*Id.*]. Plaintiff produced five documents totaling 2,711 pages. [*Id.*]. Both Parties were deposed. [*Id.*].

During the discovery period, but after the claims bar date, an assignment of claims was executed "by and between [Plaintiff's wife] and Nolan Consulting, LLC" to Plaintiff. Plaintiff attached this assignment to his Response. [Doc. #63, Ex. A, B]. In addition to this assignment of claims, Plaintiff motioned the court for leave to file a First Amended Complaint ("FAC") in order

---

1/ It appears that Plaintiff has offered conflicting deposition testimony as to whether he is a member or owner of NFT. In one place, Plaintiff testified that he is not currently a member or owner of NFT in an individual capacity, [Doc. #54 at 4], and in another, Plaintiff contends that the only operating agreement "signed by both parties" shows Plaintiff as 84% owner, in an individual capacity. [Doc. #63 at 14]. Thus, there appears to be a genuine issue of material fact as to whether Plaintiff is an owner of NFT, or whether Plaintiff is more appropriately characterized as a lender.

to add new plaintiffs, including Plaintiff's wife, Nolan Consulting, LLC, and Nolan Mgmt. Group, LLC. [Doc. #22]. This request was made over 10 months after commencement of the Adversary Proceeding.

This court granted in part and denied in part Plaintiff's Amended Motion for Leave to File Supplemental or Amended Complaint. [Doc. #41]. Plaintiff was permitted to add plaintiffs and claims for the purposes of §523(a)(19) but was denied addition of the plaintiffs for the four other claims under §523(a)(2)(A), (a)(4), (a)(6), and §727(a)(2). [*Id.*]. Accordingly, Plaintiff filed the FAC pursuant to the court's order.

Subsequently, Defendant moved the court for summary judgement.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Wilson v. Gregory*, 3 F.4th 844, 855 (6th Cir. 2021). In reviewing a motion for summary judgment, all inferences must be viewed in the light most favorable to the nonmoving party. *See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S. Ct. 1348, 1355–57 (1986).

The party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53 (1986). When the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2507 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find for the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . and must do more than [aver] without giving any significant probative evidence to support [its position]." *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Further, the burden placed upon the movant for summary judgment is to show that the nonmoving party has failed to establish an essential element of its case upon which it would bear the ultimate burden of proof at trial. *Celotex*, 477 U.S. 317 at 322, 106 S. Ct. at 2552. In order to preclude the granting of summary judgment, the nonmoving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)(citing *Matsushita*, 475 U.S. at 586; *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989)).

**II. The Alleged Debt**

The determination of whether Plaintiff holds a nondischargeable claim against Defendant is a two-step process. *In re Hryhorchuk*, 211 B.R. 647, 650 (Bankr. W.D. Tenn. 1997); *In re Ludwikowski*, No. 24-30668, 2025 WL 957457, at *4 (Bankr. N.D. Ohio Mar. 28, 2025). First, a valid prepetition debt must be established under applicable nonbankruptcy law. *In re Ludwikowski*, 2025 WL 957457, at *4. Second, the court will determine whether the debt is nondischargeable under §523(a) of the Code. *Id.*

There are factual issues related to Plaintiff's alleged prepetition debt. First, it does not appear that Plaintiff ever directly loaned funds to Defendant. Instead, funds were provided to NFT. Further, the record reflects that, at different times, funds were wired to NFT by Plaintiff's wife, Nolan Management, LLC, and Plaintiff and Plaintiff's wife jointly. Accordingly, it is unclear what portion of the debt, if any, is owed to Plaintiff. Second, Defendant asserts that the status of the Parties' agreement as an enforceable contract is "suspect." [Doc. #54 at 6]. The current record before the court does not make it clear that Defendant owes a debt that is valid under the Ohio Statute of Frauds. No written agreement(s) or note(s) have been submitted to the court. Further, if the agreements were oral, the precise terms of those agreements are not clear. For example, there is a factual dispute as to whether Defendant was to work exclusively for NFT, work full-time for NFT, or some combination thereof.

It appears that Plaintiff has offered conflicting testimony as to whether Plaintiff is a member or owner of NFT. In one place, Plaintiff testified that he is not currently a member or owner of NFT in an individual capacity. [Doc. #54 at 4], and in another, Plaintiff contends that the only operating agreement "signed by both parties" shows Plaintiff as 84% owner, in an individual capacity. [Doc. #63 at 14]. Thus, there appears to be a genuine issue of material fact as to whether Plaintiff is an owner of NFT, or whether Plaintiff is more appropriately characterized as merely a

lender.

### III. §523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services . . . to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. §523(a)(2)(A). In order to except a debt from discharge under this section, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert v. AT&T Universal Card Servs.* (*In re Rembert*), 141 F.3d 277, 280–81 (6th Cir. 1998).

Under §523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009)(quoting *Peoples Sec. Fin. Co., Inc. v. Todd* (*In re Todd*), 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)). However, where a debtor makes a promise or statement regarding a future intention, a §523(a)(2)(A) claim may nonetheless be viable under a fraudulent inducement theory, but only if it can be shown that the debtor had no present intent to fulfill the promise. *In re Childers*, 651 B.R. 699, 719, n.11 (Bankr. N.D. Ohio 2023).

Section 523(a)(2)(A) requires Plaintiff to show that Defendant had the subjective intent to deceive. *Rembert* 141 F.3d at 280. The Sixth Circuit explained that what "courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Id.* at 282. This element alone frequently makes summary judgment inappropriate for claims made under §523(a)(2)(A) because determinations of an individual's state of mind often require the court to assess the credibility and demeanor of the witnesses at trial. *In re Laskey*, 441 B.R. 853, 856 (Bankr. N.D. Ohio 2010); 10 Collier on Bankruptcy ¶ 7056.11 (16th ed. 2026).

Here, Plaintiff has alleged that Defendant fraudulently induced his investments into NFT based on false representations that Defendant would quit all other jobs and work exclusively for NFT. Defendant's alleged promise to quit was not memorialized in any written agreement, nor

was it included in any of the alleged operating agreements. Plaintiff's action for fraud therefore appears to be based on an oral agreement, which is described by Plaintiff as "the pillar" of his investment. [Doc. #63 at 10].

On the current record before the court, there are few undisputed facts as to Defendant's subjective intent. Defendant characterizes the promise to quit as an express or implied contract. In general, breaching a contract is not fraud for purposes of §523(a)(2)(A). *In re Childers*, 651 B.R. at 719; *In re Hunter*, 535 B.R. 203, 218 (Bankr. N.D. Ohio 2015). Plaintiff, however, presents the exception to the rule, under which a promise of future action can indeed rise to fraud, but only if the promisor had no present intent to perform at the time the promise was made.

With regard to Defendant's promise, one factual issue stands out among the rest. It is undisputed that Defendant admitted, under oath, having lied to Plaintiff about quitting his other jobs. [Doc. #63 at 11]. Regardless of the timing of this lie, Defendant's admission raises serious concerns about his honesty and subjective intent in dealing with Plaintiff. Particularly when viewing the facts in a light most favorable to Plaintiff, a "degree of fraudulent intent" can be inferred from Defendant's dishonesty. *See*, *In re Laskey*, 441 B.R. at 857. Because the court views the record through a summary judgment lens, and because the record establishes that Defendant admitted to having misrepresented his employment status to Plaintiff for at least some period of time, there are genuine issues of material fact that preclude summary judgment. There are also issues as to how much, if any, of Plaintiff's "investments" were made in justified reliance on Defendant's misrepresentation. Accordingly, summary judgment on Plaintiff's claim under §523(a)(2)(A) will be denied.

## IV. §523(a)(4)

### i. Fiduciary Capacity

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). The first prong of §523(a)(4), "fraud or defalcation while acting in a fiduciary capacity," requires more than an equitable or implied fiduciary relationship. The Sixth Circuit has held that "fiduciary capacity" in §523(a)(4) is "limited only to those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Commonwealth Land Title Co. v. Blaszak* (*In re Blaszak*), 397 F.3d 386, 391 (6th Cir. 2005)(quoting *R.E. Am., Inc. v. Garver* (*In*

*re Garver*), 116 F.3d 176, 180 (6th Cir. 1997)). To establish a §523(a)(4) claim under the first prong, the creditor must show three things: "(1) a pre-existing fiduciary relationship; (2) breach of that relationship; and (3) a resulting loss." *Id.* at 390; *see also*, *In re Poynter*, 535 F. App'x 479, 481–82 (6th Cir. 2013)(quoting *In re Smith*, 238 B.R. 664, 670 (Bankr. W.D. Ky. 1999)). Whether a relationship meets the standard for a "fiduciary" under §523(a)(4) is generally a question of "federal, not state, law[.]" *In re Blaszak*, 397 F.3d at 390.

Plaintiff first asserts a fraud or defalcation claim under §523(a)(4) on the basis that he and Defendant had a fiduciary relationship. Plaintiff contends there is a material issue of fact that must be determined by the court. By invoking the various NFT operating agreements, Plaintiff argues that because he possibly is, or was, a member of NFT at some point, a fiduciary relationship may exist for purposes of §523(a)(4). [Doc. #63 at 14–15]. Additionally, Plaintiff asserts that "special circumstances" suggest the Parties' familial relationship supports the finding of a fiduciary relationship. [*Id.* at 15].

In support of these arguments, Plaintiff cites Ohio state law to define "fiduciary relationship." [*Id.* at 14, 16]. However, the existence of a fiduciary relationship for purposes of §523(a)(4) is ultimately an issue of federal law, and turns on the existence of an "express or technical trust". *In re Blaszak*, 397 F.3d at 390; *In Re Nadeau*, 2022 WL 4540235 at *17, 2022 Bankr. LEXIS 2778 at **39-40 (Bankr. N.D. Ohio Sept. 28, 2022); *In re Hudon*, 677 B.R. 108, 131 (Bankr. E.D. Tenn. 2025); *see generally*, 4 Collier on Bankruptcy ¶ 523.10[1][d] (16th ed. 2026). The Sixth Circuit has adopted a narrow interpretation of a fiduciary in the context of §523(a)(4). *In re Hesse*, 516 B.R. 491, 494 (Bankr. S. D. Ohio 2014)(citing *Patel v. Shamrock Floorcovering Serv., Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009).

Courts have held that the existence of a familial relationship does not establish the requisite fiduciary relationship for purposes of §523(a)(4). *In re Bachman*, 203 B.R. 637, 639 (Bankr. S.D. Ohio 1996); *In re Venable*, 2002 WL 523908 at *3, 2002 Bankr. LEXIS 2127 at **6-7 (Bankr. M.D.N.C. Mar. 26, 2002); *In re Roberts*, 2017 WL 2779625 at *9, 2017 Bankr. LEXIS at **23-24 (Bankr. E.D. Cal. June 26, 2017). Thus, an uncle-nephew relationship is insufficient to create the type of fiduciary duties required for non-dischargeability under §523(a)(4).

Courts have also held that a shared business ownership is generally not sufficient to establish an express or technical trust as required by the term "fiduciary capacity" in §523(a)(4). *In re King*, 624 B.R. 259, 303 (Bankr. N.D. Ga. 2020)(ordinary business relationship does not

establish a trust relationship); *In re Davis*, 2013 WL 3776363 at *4, 2013 Bankr. LEXIS 2945 at *14 (Bankr. D. Kan. July 15, 2013)(business relationship insufficient); *In re Insley*, 313 B.R. 667 (Bankr. W.D. Pa. 2004)(business partners); *In re Spector*, 133 B.R. 733 (Bankr. E.D. Pa. 1991)(general partnership relationship); *In re Guy*, 101 B.R. 961, 988 (Bankr. N.D. Ind. 1988)(general partnership relationship); *In re Tocci*, 34 B.R. 66 (Bankr. S.D. Fla. 1983)(financing agreement).

Plaintiff offers little to support the contention that the required fiduciary relationship was present in this case. Because Plaintiff has not met his burden of setting forth specific facts that could create even an inference of the existence of an express or technical trust, the court need not examine whether fraud or defalcation under the fiduciary prong of §523(a)(4) has occurred. The claim fails as a matter of law because there is no fiduciary relationship.

**ii. Embezzlement or larceny.**

The court next turns to Plaintiff's §523(a)(4) "embezzlement and/or larceny" claim. Unlike the first part of §523(a)(4), nondischargeability for "embezzlement, or larceny" does not require a fiduciary relationship. The Sixth Circuit defines embezzlement as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Brady*, 101 F.3d 1165, 1172–73 (6th Cir. 1996). In contrast, "[l]arceny differs from embezzlement in that the original taking or possession of the property is unlawful and without the consent of the owner." *In re Pierron*, 448 B.R. 228, 240 (Bankr. S.D. Ohio 2011). Embezzlement and larceny both require an element of fraudulent intent. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274–75, 133 S. Ct. 1754, 1760 (2013); *In re Piercy*, 21 F.4th 909, 919 (6th Cir. 2021).

Defendant raises two arguments on summary judgment. First, that any embezzlement or larceny claim would belong to NFT, not Plaintiff. And second, that Plaintiff admitted he has no evidence to support the allegations that Defendant engaged in "converting, stealing, embezzling and/or misappropriating funds." [Doc. #54 at 9–10; Doc. #45 at 12]. Because both arguments represent necessary elements of embezzlement and larceny, resolution of either in Defendant's favor would be dispositive.

It appears that Defendant is correct that Plaintiff admitted under oath that he has no factual evidence of embezzlement or larceny. [Doc. #53 at 37–51]. Plaintiff does not address his prior testimony regarding embezzlement or larceny in his Response, nor does he proffer any specific

facts that show a genuine issue for trial. Even viewing all inferences in the light most favorable to him, Plaintiff's Response consists of conclusory allegations. After extensive discovery, the absence of any probative evidence of embezzlement or larceny does not meet Plaintiff's burden to "not rest upon the mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Defendant has met his initial burden of identifying the absence of any factual issue. To go forward, Plaintiff was required to set forth specific facts that create a dispute for trial. Instead, Plaintiff rested on his allegations, asserting, "There is clearly a genuine dispute of material fact as to whether there is a fiduciary duty, whether Paul was a lender, and whether Defendant engaged in fraudulent activity." [Doc. #63 at 16]. Because Plaintiff has given the court no evidence of a genuine issue of material fact as to whether Defendant embezzled or stole any of Plaintiff's property, dismissal of Plaintiff's §523(a)(4) claim on summary judgment will be granted.

## V. §523(a)(6)

Section 523(a)(6) provides that a debt arising out of a "willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the debtor's discharge. 11 U.S.C. §523(a)(6). Given that the word "willful" directly modifies the word "injury," "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *In re Rapp*, 375 B.R. 421, 435–36 (Bankr. S.D. Ohio 2007)(quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 976–77 (1988)). A "willful" injury is one where the debtor "either desires to cause the consequences of his actions or believes 'that the consequences are substantially certain to result' from his actions." *Id.* at 436 (quoting *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999)(internal quotations omitted)); *see also*, *In re Trantham*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004). Addressing the willful requirement of §523(a)(6), the Supreme Court stated that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau*, 523 U.S. at 61, 118 S. Ct. 974.

The Supreme Court has held that for purposes of §523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). Otherwise said, "[t]here must also be a consciousness of wrongdoing . . . . It is this knowledge of wrongdoing,

not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *In re Bradley*, 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014)(quoting *In re Russell*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

The Supreme Court has held that the same conduct can support a finding of nondischargeability under both §523(a)(2)(A) and (a)(6) - that is, the two are not mutually exclusive. *Husky Intern. Elecs., Inc. v. Ritz*, 578 U.S. 355, 363, 136 S. Ct. 1581, 1588 (2016)("[T]he debtors who make false representations under § 523(a)(2)(A) could likewise also inflict "willful and malicious injury" under § 523(a)(6). There is, in short, overlap, but that overlap appears inevitable.").

Here, it appears that there remain genuine issues of material fact at to Plaintiff's claims under §523(a)(6). Accordingly, Plaintiff's claim under §523(a)(6) will be allowed to go forward.

## VI. §523(a)(19)

Section 523(a)(19) of the Code provides:

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(19) that—

(A) is for—

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results, before, on, or after the date on which the petition was filed, from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor; . . .

The Defendant asserts that summary judgment should be granted on any claim for nondischargeability under §523(a)(19) because the entry of a judgment in a nonbankruptcy forum is required for the provision to apply. [Doc. #54 at 11–12, Doc. #69 at 11]; *see also*, *In re Minardi*, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015). Plaintiff disagrees, contending that bankruptcy courts are permitted to adjudicate the underlying securities liability, citing *In re Johnson*, 661 B.R. 844 (Bankr. W.D. Wis. 2024).

There is an almost even split of authority on this issue, and there is no controlling precedent in the Sixth Circuit. Courts have looked at the history of the legislation, and bankruptcy court's traditional jurisdictional limitations, weighing those factors against the use of the phrase: "any Federal or State judicial or administrative proceeding."

Here, there is no factual dispute as to whether a "judgment, order, consent order, or decree" adjudicating Defendant's violation of securities law exists. It does not. Therefore, resolution on the granting or denying of Summary Judgment turns on whether this bankruptcy court can determine liability and damages under the statutes.

**i. The legal background**

"The bankruptcy court is a court of limited jurisdiction." *In re Granger Garage, Inc*., 921 F.2d 74, 77 (6th Cir. 1990). A bankruptcy court's jurisdiction, like other federal courts, is generally "grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

Congress had extended bankruptcy courts' jurisdiction into certain areas by explicit statutory provisions. For example, the authority to determine tax issues is spelled out in 11 U.S.C. §505. On the other hand, Congress has statutorily restricted bankruptcy court jurisdiction to hear and determine the amount of personal injury claims. *See*, 28 U.S.C. §157(b)(5). There are also exceptions to federal court jurisdiction – and thus, bankruptcy court jurisdiction – based on judicial interpretation of historical antecedents. Two of these exceptions are the "probate exception" and the "domestic relations exception". *See generally*, *Marshall v. Marshall*, 547 U.S. 293, 311–12, 126 S.Ct. 1735, 1747-48, 164 L.Ed.2d 480 (2006).

The expansion of the bankruptcy court's jurisdiction into securities law[2] is vexing because

2/ It should be noted that §523(a)(19) applies to violations of both federal and state securities laws. As an example, a debtor could violate securities law in Montana, or Louisiana, and then move to Ohio and establish domicile for bankruptcy purposes. If (hypothetically) there were few published decisions on Montana law, or securities laws that (hypothetically) had French origins – would Congress have wanted an Ohio bankruptcy court to

it arises by implication, with almost no legislative history that such an expansion was part of Congress' intent in amending the language of §523(a)(19). As initially enacted in 2002,[3] the statute appeared to require that the judgment, order, consent order, or decree be entered in a judicial or administrative proceeding prior to the filing of the debtor's bankruptcy case. *See*, 4 Collier on Bankruptcy, ¶523.27[1] (16th ed. 2026). If a pre-petition determination was required, the original version of the statute effectively excluded bankruptcy courts from making a determination regarding liability for securities law violations, as there would be no bankruptcy court jurisdiction over the issue prior to the filing of the debtor's bankruptcy case. *See e.g.*, 28 U.S.C. §1334(b). Notably, when such a judgment, order, consent order, or decree exists, the statute has been held to be an intentional departure from the common-law understanding of collateral estoppel and issue preclusion principles. *See*, *In re Asbra*, 641 B.R. 589, 610-11 (Bankr. S.D. Ohio 2022)(citing cases).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended §523(a)(19) to remove any question about the temporal requirement as to the determination of liability. The statute now applies to applicable determinations made: "before, on, or after the date on which the petition was filed". The issue that has divided the bankruptcy courts is whether the removal of the temporal limitation was also intended to expand bankruptcy court jurisdiction to include the power to actual make the determination regarding a debtor's liability for state and federal securities law violations.

**ii. Do the purposes of the Sarbanes-Oxley Act require a finding of bankruptcy court jurisdiction to determine liability for securities law violations?**

Courts have asserted that the purposes of the Sarbanes-Oxley Act are a substantial factor weighing in favor of finding that bankruptcy court have jurisdiction to enter judgments under §523(a)(19). *See e.g.*, *In re Hill*, 495 B.R. 646, 659 (Bankr. D.N.J. 2013)(allowing bankruptcy court authority to issue such judgments is "both undeniable and thoroughly consistent with the purposes of Sarbanes–Oxley."). This court respectfully disagrees with the idea that the purposes

---

decide important local issues from another jurisdiction based upon limited knowledge of its laws? Arguably, the answer to that concern would be abstention by the bankruptcy court if the issues were too arcane. Moreover, this type of difficulty would not be substantially different from having to interpret a divorce decree from another state as part of a dischargeability determination under §523(a)(5).

3/ The Corporate and Criminal Fraud Accountability Act of 2002 added paragraph (19) to section 523(a). The Corporate and Criminal Fraud Accountability Act of 2002 is title VIII of the Sarbanes-Oxley Act of 2002.

of the Sabanes-Oxley Act should be given great weight in determining the extent of bankruptcy court jurisdiction under the 2005 amendment to §523(a)(19).

The Sarbanes-Oxley Act was passed three years before BAPCPA. It included the first iteration of §523(a)(19), which was intended, in part, to prevent the need to relitigate securities fraud claims that had already been won. *See*, *In re Jafari*, 401 B.R. 494, 498 (Bankr. D. Colo. 2009)(citing 148 Cong. Rec. S7418, 7419 (July 26, 2002)(statement of Senator Patrick Leahy)). For purposes of the present analysis, the original legislation (arguably) appears to have: 1) excluded the possibility that a bankruptcy court could enter a judgment for securities fraud liability; and 2) required the entry of a pre-petition judgment in another court or administrative proceeding in order for securities fraud to be held non-dischargeable.

The 2005 amendment was clearly intended to fix one of the problems inherent in the original statutory language – that the procedural happenstance of the entry of a pre-petition judgment was (arguably) determinative of whether securities fraud was dischargeable or non-dischargeable under §523(a)(19). It appears to this court that fixing that timing issue would have been a fully sufficient reason, in and of itself, for the 2005 statutory changes.

The changes to the statute made by BAPCPA removed the statutory incentive for security law violators to rush to file bankruptcy in order to gain an advantage in dischargeability litigation. Whether the legislation amending the statute was also intended to go further, and give bankruptcy courts jurisdiction to enter §523(a)(19) judgments, does not appear to have been necessary to achieve a valid legislative purpose, particularly when the original Sarbanes-Oxley Act itself included a narrower remedy.

**iii. Can an answer be found in the structure of a similar §523(a) provision?**

Some courts addressing the jurisdictional question have noted that subsections (a)(11) and (a)(19) are similar in origin and in purpose. Both were created to prevent the use of bankruptcy as a shield for debtors who have committed fraud. *In re Tills*, 419 B.R. 444, 452 (Bankr. S.D. Cal. 2009); *In re Harris*, 135 B.R. 434, 436 (Bankr. S.D. Fla. 1992); *In re McClung*, 304 B.R. 419, 425 (Bankr. D. Idaho 2004)("Congress noted that, under the current system, state regulators are forced to " 're-prove' their fraud cases in bankruptcy court to prevent discharge," and that with limited resources "already stretched to protect fraud victims, state regulators must plow the same ground twice in securities fraud cases.""). Subsection (a)(11) was added by the Crime Control Act of 1990 amidst a national banking crisis fraught with financial fraud. *Harris* 135 B.R. at 434; *Meyer*

*v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994); *In re Pujdak*, 462 B.R. 560 (Bankr. S.C. 2011). Subsection (a)(19) was added by the Corporate and Criminal Fraud Accountability Act of 2002 following major corporate and accounting scandals. *In re Gibbons*, 289 B.R. 588, 591 (Bankr. S.D.N.Y. 2003), *aff'd*, 311 B.R. 402 (S.D.N.Y. 2004), *aff'd*, 155 F. App'x 534 (2d Cir. 2005); *In re Buzzeo*, 365 B.R. 578, 582 (Bankr. W.D. Pa. 2007); 4 Collier on Bankruptcy ¶ 523.27[1] (16th ed. 2026)(citing S. Rep. No. 107-146, at 10 (2002)). Courts have further recognized that the congressional intent behind both provisions is to extend preclusive effect to dispositions that would not otherwise have preclusive effect under the common law for the purposes of dischargeability actions. *In re Bundy*, 468 B.R. 916, 919 (Bankr. E.D. Wash. 2012)(citing *Meyer* 36 F.3d 1375); *In re Minardi*, 536 B.R. 171, 192 (Bankr. E.D. Tex. 2015); *In re Behrends*, 660 F. App'x 696, 700 (10th Cir. 2016).

While both provisions may have been intended to expand the preclusive effects of default judgments, consent judgments, and settlements beyond the normal limitations of collateral estoppel, neither statute expressly excludes bankruptcy courts from making a determination regarding the underlying liability. Notwithstanding any similarities between these provisions, nothing in the statutory structure or the very limited (a)(11) case law appears to support a narrow reading of (a)(19). *In re Hill* 495 B.R. at 657–700; *In re Holzhueter*, 571 B.R. at 823–24. Moreover, even if (a)(19) were structurally consistent with other nondischargeability provisions requiring nonbankruptcy determinations, there may be no reason to go beyond a nonliteral interpretation of its plain language.

**iv. Does the rule of statutory construction against surplusage require finding no bankruptcy court jurisdiction?**

Some courts that have held that §523(a)(19) requires a securities liability determination by a non-bankruptcy court have focused on the canon against surplusage, which states that statues should be construed so as to avoid redundancy or superfluousness. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 112 S. Ct. 1146 (1992); *Bird v. U.S.*, 187 U.S. 118, 124, 23 S. Ct. 42, 44 (1902). The leading case for limiting bankruptcy court jurisdiction on "surplusage" is *In re Jafari*, 401 B.R. 494 (Bankr. D. Colo. 2009). *Jafari*, and the courts that follow its rationale suggest that allowing bankruptcy courts to provide the order required by subparagraph B would effectively read that subsection out the statute. *Jafari*, 401 B.R. at 499. As Defendant points out, in an unpublished case the Southern District of Ohio Bankruptcy Court stated in a footnote that it found

the surplusage view more persuasive. *In re Holtz*, 2021 WL 5596413, at *6 n.5, 2021 Bankr. LEXIS 3274 at at *14 n.5 (Bankr. S.D. Ohio Nov. 17, 2021)(citing *Jafari*, 401 B.R. at 497–500).

The concept behind the surplusage argument is that "interpreting § 523(a)(19) to allow a bankruptcy court to decide whether the requirement[s] of § 523(a)(19)(A) have been met would render § 523(a)(19)(B) meaningless." *Holtz*, at n.5 (citing cases). In other words, the subsection (B) requirement that the debt must be memorialized in a judicial or administrative order or settlement agreement, would arguably be unnecessary if a bankruptcy court could both determine both liability and non-dischargeability. *Jafari* compares the structure of §523(a)(19), requiring a judgment, with §523(a)(2) – which has no judgment requirement because bankruptcy courts can determine both liability and non-dischargeability. *Jafari*, at 497-498. "If the language of § 523(a)(19) had ended after its Subsection A requirement, it would have paralleled this language of § 523(a)(2)(A) and clearly the bankruptcy court would have been able to determine liability if it were not bound by a prior determination." *Id*. at 498. Thus, subsection (B) would be surplusage, if bankruptcy courts could determine both liability and dischargeability. But it would not be entirely redundant – clearly, subsection (B) has, as part of its purpose, eliminating the need to meet relatively strict collateral estoppel concepts that would interfere with, for example, a settlement agreement in an administrative proceeding being non-dischargeable. While *Jafari* acknowledges this,[4] the *Jafari* court states: "If the Court were to interpret this language broadly enough to allow the bankruptcy court's own order to satisfy the requirement, then it would essentially read the Subsection B requirement out of the statute." *Id*. at 499.

While *Jafari* certainly has a valid point, it tends more on the side of "this provisions could have been written more clearly and succinctly,"[5] rather than "this provision is rendered utterly meaningless". Does that suggest actual Congressional intent? Or is it simply an artifact of the amendment process? At the time it was decided, *Jafari*'s argument was somewhat more compelling than is today.

The legal landscape has subtly changed, and with an issue that has split the courts almost down the middle, this court finds the change to be important. Earlier this year the Supreme Court

---

4/ "It is certainly possible that Congress' intent was only to ensure this preclusive effect, without intending to prevent the bankruptcy court from reaching its own determination of liability when no prior decision existed." *Jafari*, at 499.

5/ The court will refrain from discussing whether any other provisions of the Bankruptcy Code could have been written more clearly and succinctly.

re-emphasized that "[t]he canon against surplusage is subordinate to the 'cardinal canon' that 'a legislature says in a statute what it means and means in a statute what it says there.'" *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 406, 146 S. Ct, 736, 746, 224 L.Ed.2d 186 (2026)(citing *Connecticut Nat. Bank v. Germain*, 503 U.S. at 253–254). To the extent that the provisions of §523(a)(19)(B) can be viewed as using "broad, overlapping terms" – that is precisely the descriptive phrase used in *Konan*. *Id*.

**v. While "any" does not always mean all, that is its plain meaning.**

The 2005 amendments eliminated any potential temporal requirement in subparagraph (B) by inserting the phrase "before, on, or after the date on which the petition was filed."[6] *See*, 4 Collier on Bankruptcy ¶ 523.27 (16th ed. 2026). This amendment raised the question whether the specific language of the phrase "any Federal or State judicial or administrative proceeding" under subparagraph (B) includes bankruptcy courts, thereby allowing such courts to enter judgments based upon federal and state securities law violations. The same language had in place before the amendment, but it had not applied to bankruptcy courts because of the requirement (that arguably arose from a natural reading of the statute) that any judgment had to have been entered prior to the filing of bankruptcy.

Thus, the issue is whether in eliminating the temporal requirement by inserting the phrase "before, on, or after the date on which the petition was filed", Congress also intended to expand bankruptcy court jurisdiction to allow a determination of debtor liability on securities law claims under §523(a)(19). As has been discussed, it is certainly plausible that the addition of the phrase was intended simply to permit a potential creditor to secure a liability determination in another forum, or through a settlement agreement, obtained after the filing of the petition. *See,* 4 Collier on Bankruptcy ¶ 523.27[2] (16th ed. 2026); *In re Holzhueter*, 571 B.R. 812, 823 (Bankr. W.D. Wis. 2017)..

The Ninth Circuit Bankruptcy Appellate Panel addressed the question in a recent decision. *In re Stehrenberger*, 665 B.R. 402, 417 (B.A.P. 9th Cir. 2024)(holding that the amended §523(a)(19) unambiguously permits the bankruptcy court to determine an underlying state law securities violation). The view that a plain reading of the statute unambiguously supports allowing

---

6/ Subparagraph (B) previously began with "results from—".

bankruptcy courts to find securities law liability is not without merit. *See In re Hill*, 495 B.R. 646, 660 (Bankr. D.N.J. 2013)(holding that (a)(19) unambiguously allows the bankruptcy court to determine securities law liability); *but see*, *Hardwick v. Anderson as Co-Trustees of Allan G. Anderson Revocable Living Tr.*, 658 B.R. 123, 130 (E.D. Tex. 2024)("11 U.S.C. § 523(a)(19) mirrors the nondischargeability provisions of 11 U.S.C. § 523(a)(11) and (13) that require a determination outside the bankruptcy court as a condition precedent for finding the debt dischargeable."). Subparagraph (B) requires only the existence of "any judgment, order, consent order, or decree entered in **any** Federal or State judicial or administrative proceeding."[7] (emphasis added).

"Any" ordinarily means "all," as in unrestricted in kind. Therefore, a plain reading of subparagraph (B) does not appear to exclude bankruptcy courts. But, the use of "any" in §523(a) has been subject to less expansive interpretations. For example, §523(a)(11) refers to a liability determination entered in "any court of the United States or of any State," but *Stehrenberger* argues that language does not necessarily include bankruptcy courts because "[t]he bankruptcy court would rarely have subject matter jurisdiction over the kinds of proceedings against depository institutions and insured credit unions that would give rise to nondischargeability under § 523(a)(11)." *In re Stehrenberger*, 665 B.R. at 416. Thus, even the reference to "any court of the United States" does not necessarily always include the bankruptcy courts.[8]

### vi. Securities liability may be determined by the bankruptcy court.

In consideration of the recent binding precedent in *U.S. Postal Serv. v. Konan*, 607 U.S. 391, 406, 146 S. Ct, 736, 746, 224 L.Ed.2d 186 (2026), the court will allow Plaintiff's (a)(19) claim to go forward, to be determined by this court. Courts provide Congress with feedback on the meaning of the legislation it passes. The "plain meaning" approach is the "cardinal cannon"

---

7/ In *Stehrenberger*, it was said that by removing the perceived temporal requirement, Congress also removed "all of the necessary implications of the temporal requirement." *Stehrenberger*, 665 B.R. at 416. Accordingly, one of these abrogated "necessary implications" is that the liability determination from which the debt arises be entered in a nonbankruptcy forum. *Id.*

8/ The phrase "court of the United States" has caused particularly difficult interpretive issues for bankruptcy courts. Courts are split regarding whether "court of the United States" as it is used in Title 28 includes non-article III courts such as bankruptcy courts. 1 Collier on Bankruptcy ¶¶ 2.02[4], 3.09[2][a] (16th ed. 2026). Notably, §523(a)(11) uses "any court of the United States", while §523(a)(19) uses the (arguably) more broadly inclusive term: "any Federal or State judicial or administrative proceeding".

of interpretation in providing that feedback. Obviously, if the result reached in this decision is based on an incorrect interpretation, Congress is free to correct it.

## VII. §727(a)(2)

Section 727(a)(2) provides that:

(a) The court shall grant the debtor a discharge unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition[.]

Under this subsection, a plaintiff must prove the following two elements: "1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property.'" *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000)(quoting *Hughes v. Lawson* (*In re Lawson* ), 122 F.3d 1237, 1240 (9th Cir. 1997)). For a debtor to be denied discharge under §727(a)(2), the act must have occurred with respect to either: 1) property of the debtor; or, 2) property of the estate. 6 Collier on Bankruptcy ¶ 707.02 (16th ed. 2026); *In re Steffner*, 479 B.R. 746, 761 (Bankr. E.D. Tenn. 2012)("§727(a)(2)(A) specifies that the property transferred, removed or concealed be 'property of the debtor.'").

The Plaintiff has the burden of proof by a preponderance of the evidence. *See*, Fed.R.Bankr.P. 4005; *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir. 1994); *In re Swegan*, 383 B.R. 646, 653 (B.A.P. 6th Cir. 2008). The provisions denying a discharge under §727 are construed liberally in favor of the debtor and strictly against the creditor, because denial of discharge represents an "extraordinary remedy" that reaches the heart of bankruptcy's central purpose. 6 Collier on Bankruptcy ¶ 727.01[4] (16th ed. 2026); *In re McDonald*, 614 B.R. 801, 810 (Bankr. N.D. Ohio 2020), *aff'd sub nom. Vara v. McDonald*, 631 B.R. 713 (N.D. Ohio 2021), *aff'd sub nom. In re McDonald*, 29 F.4th 817 (6th Cir. 2022); *In re Hake*, 387 B.R. 490, 501 (Bankr. N.D. Ohio 2008)("Because discharge is the objective of a

bankruptcy case, denial of discharge is a drastic measure.").

Because it would be inappropriate to determine the subjective intent element on summary judgment, the primary issue at this stage is the ownership of the funds in the Edward Jones account. Defendant attached to its Motion an affidavit signed by Defendant's wife. [Doc. #54, Ex. A]. The facts set out by the affidavit do not appear to be disputed. The current record establishes that in May 2023, prior to Defendant's bankruptcy petition, Defendant's wife removed $107,505.79 from a joint and survivorship Edward Jones account. [*Id.* at 12–13, Ex. A]. Defendant and his wife have co-owned the account as joint tenants with the right of survivorship since 2012. [*Id.*]. Both contributed individual and marital funds to the account over the years. [*Id.*]. Defendant's wife's removal of the funds was disclosed on Defendant's bankruptcy petition and the trustee has not sought to avoid the transfer. [*Id.*].

On these facts, Defendant primarily argues that the transferred funds do not belong to Defendant or his bankruptcy estate, but rather to Defendant's wife. [*Id.* at 12–13]. Defendant cites an Ohio case, asserting the rebuttable presumption of equal ownership for joint and survivorship accounts during the lifetimes of the co-owners of the account. *Est. of Cowling v. Est. of Cowling*, 109 Ohio St.3d 276, 279, 847 N.E.2d 405, 409 (Ohio 2006)(citing, *Vetter v. Hampton*, 54 Ohio St.2d 227, 375 N.E.2d 804 (Ohio 1978)). The "evidence to the contrary" is evidence as to the "proportion to the net contributions by each to the sums on deposit" or "clear and convincing evidence of a different intent.". *Id*. at 409-410 (citing, *In re Estate of Thomson*, 666 Ohio St.2d 422, 423 N.E.2d 90 (Ohio 1981)). While evidence of "net contribution" (or "clear and convincing evidence of other intent") can override the presumption of equal ownership, the Ohio Supreme Court made it clear that "the presumption of equal ownership continues to exist when net contributions are not proven." *Id*., at 410.

Plaintiff does not point to any facts in the record to rebut Defendant's citation to the equal ownership presumption. Instead, Plaintiff focuses on the alleged factual issues surrounding Defendant's subjective intent to hinder, delay, or defraud. [Doc. #63 at 20]. Plaintiff further asserts "the very issue in dispute: whether that withdrawal represented her equitable share or a strategic effort to shield assets." [*Id.*].

Here, neither Party has offered any evidence of net contributions. In the absence of any citation to evidence that would rebut the equal ownership presumption, even under the heightened standards of Summary Judgment it appears that Plaintiff has not created a genuine issue of material

fact as to the transferred monies being either property of the debtor or property of the estate. While the standards for Summary Judgment under Ohio's civil rules and the Federal civil rules differ in some respects, Ohio courts regularly grant summary judgment on issues relating to ownership of joint accounts in the absence of evidence regarding net contributions. *See e.g*., *Matter of Estate of Boggs v. Todd*, 270 N.E3d 662 (Ohio App. 2nd Dist. 2025); *DiPalma v. DiPalma*, 2023 WL 7406883 at **1-6, 2023 Ohio App. LEXIS 3891 at **P1-P24 (Ohio App. 9th Dist. Nov. 8, 2023).

While the transfer of property of the debtor or property of the estate is generally a requirement for denial of discharge, there are limited exceptions to this requirement. Those exceptions have been litigated in the context of alter ego claims, and under Section 727(a)(7). *See*, *Steffner*, 479 B.R. at 761-762. Section 727(a)(7) has not been pleaded, and does not appear to be applicable, as there is no "insider" in a related bankruptcy case. The "alter ego" claims generally are in the context of veil piercing, allowing a finding of control by the debtor over transfers made by a non-debtor. *Id*. Similarly, there is bankruptcy case law, in the context of a martial relationship, stating that a debtor's "permission" may be sufficient under Section 727(a)(2). *See*, *In re Wingate*, 332 B.R. 649, 653-654 (Bankr. M.D. Fla. 2005); *see also*, *In re Seay*, 215 B.R. 780, 790-791 (B.A.P. 10th Cir. 1997).

This is a close question. The path to proving at trial that the Debtor intended to hinder, delay or defraud creditors is going to be very narrow in the face of an unrebutted presumption that the transferred funds were non-debtor wife's property.[9] However, the issue turns on intent,[10] and viewed in the light most favorable to Plaintiff as the nonmoving party, genuine issues of material fact appear to remain for trial as to the Debtor's intent behind the transfer of the Edward Jones account funds, if he had any role in the decision.

**CONCLUSION**

Defendant has established entitlement to judgment as a matter of law on Plaintiff's claim under §523(a)(4). Viewing the facts in a light most favorable to the Plaintiff, there appears to be genuine issues of material facts precluding the grant of summary judgment on the claims under

---

9/ "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Reinhardt*, 177 F.4 th 684, 696 (6th Cir. 2026); *In re Reinhardt*, 563 F.3d 558, 563 (6th Cir. 2009).

10/ As was stated in *In re Swegan*, 383 B.R. 646, 655-656 (B.A.P. 6th Cir. 2008): "'[S]ummary judgment is particularly inappropriate' when an individual's intent is at issue." (citing, *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002) (quoting *Marohnic v. Walker*, 800 F.2d 613, 617 (6th Cir. 1986)).

§523(a)(2)(A), (a)(6), (a)(19), and §727(a)(2).

**ACCORDINGLY**, for the reasons discussed above, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment be, and hereby is, **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment as to Plaintiff's claims for non-dischargability under Section 523(a)(4) be, and is hereby, Granted.

**IT IS FURTHER ORDERED** that the remainder of Defendant's Motion for Summary Judgment is Denied.

It is **FURTHER ORDERED** that this matter will be set for Pre-Trial on the scheduling of a trial date, and other deadlines, on October 20, 2026 at 2:30 p.m. at the United States Bankruptcy Court, Courtroom #2, 6th Floor, 405 Madison Avenue, Toledo, Ohio 43604. Parties may participate in person in CR#2 or by telephone by dialing into the conference line no less than five (5) minutes prior to the scheduled hearing. (419-718-0655; Access code: 97661245#).